**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------- x

**RIO TINO FRANCE S.A.S.,**

**Plaintiff,**

**-against-**

**HOWMET CORPORATION, et al.,**

**Defendants.**

-------------------------------------------------------- x

**1:25-cv-5052 (ALC)**

**OPINION AND ORDER**

**ANDREW L. CARTER, JR., United States District Judge:**

Pending before the Court is Defendants Howmet Corporation and Howmet Aerospace Inc.'s (collectively, "Howmet," or "Defendants") Motion to Dismiss the Complaint. ECF Nos. 32-33. Plaintiff Rio Tinto France S.A.S. ("Rio Tinto" or "Plaintiff") brought three claims against Howmet, alleging breach of contract and the implied covenant of good faith and fair dealing and seeking declaratory judgment regarding Plaintiff's duty to indemnify Howmet. Defendants seek to dismiss the Complaint for lack of subject matter jurisdiction under Fed. R. of Civ. Pro. 12(b)(1) and failure to state a claim under Fed. R. of Civ. Pro 12(b)(6).

For the reasons stated below, Defendants' Motion is **GRANTED** in part and **DENIED** in part.

## BACKGROUND

### Factual Background

The facts in this section are taken from the Complaint and its incorporated documents. The facts are assumed to be true for purposes of the Motion to Dismiss.

Plaintiff Rio Tinto and Defendants Howmet are the successors, or partial successors, to a contract (the "Blade Agreement"). Compl. at ¶¶ 9, 11-12. The Blade Agreement requires Rio Tinto to indemnify Defendants Howmet for certain liabilities incurred on certain properties. *See*

Compl. at ¶¶ 13-18. The Blade Agreement requires, in turn, Howmet to notify Rio Tinto of any "claim, assertion, event, or proceeding" for which Howmet may ask Rio Tinto to indemnify them. *See* Compl. at ¶ 24; Blade Agreement, § 9.03(d).

Among those properties for which Rio Tinto has indemnification obligations is the "Georgetown Site," which is located on land owned by entities affiliated with Halton Hadley Limited Partnership (collectively, "Hadley," or the "Hadley Entities"). Compl. at ¶¶ 13-16. Howmet is the tenant at the Georgetown Site. *Id*. at ¶ 27. Howmet signed a lease in 2004 under which Howmet is responsible for decontamination of the property and has indemnified the landlord from any cost related thereto. *Id*. at ¶¶ 34-35.

In 2020, Howmet commissioned two environmental site assessments that identified contamination at the Georgetown Site. *Id*. at ¶ 37 (the "2020 Phase I and II environmental site assessment" and "Supplemental Phase II environmental site assessment," together the "ESAs"). Howmet thereafter signed a litigation tolling agreement with Hadley to toll the statute of litigations on any claims related to the assessments. *Id.* at ¶¶ 50-51. Howmet did not notify Rio Tinto of the environmental assessments or the litigation tolling agreement. *Id*. at ¶¶ 51-52.

The tolling agreement lapsed in 2023, after which Hadley sued Howmet in Canada Superior Court, commencing the "Halton Hadley Litigation." *Id*. at ¶¶ 53, 55. On December 27, 2023, and in January 2024, Howmet informed Rio Tinto of the litigation and asked for indemnification. *Id*. at ¶¶ 60-62. Howmet later informed Rio Tinto that it only would seek indemnification "for the presence of [1,1,1-Tricholoroethane ("TCA"), a volatile organic compound ("VOC")] at the Georgetown Site," not for the entirety of the liability raised in the Halton Hadley Litigation. *Id*. at 71.

**Procedural History**

Rio Tinto brought suit against Howmet in this Court pursuant to the venue selection clause in the Blade Agreement. Rio Tinto's Complaint alleges that Howmet breached the Blade Agreement by failing to notify Rio Tinto of certain events as required and failure to mitigate damages (Count I); and breach the implied covenant of good faith and fair dealing by "inviting litigation" with Hadley and preventing Rio Tinto from resolving the underlying dispute (Count II). Rio Tinto also seeks declaratory judgment establishing that it has no duty to indemnify Howmet in the Halton Hadley Lawsuit (Count III).

On January 8, 2026, Defendants moved to dismiss the complaint for ripeness and failure to state a claim. ECF Nos. 32-33 (Howmet's Memorandum in Support of Dismissal, ECF No. 33, is cited herein as "Mot."). Plaintiff filed their Opposition on February 5, 2026. ECF No. 33 (cited to herein as "Opp."). Defendants filed their Reply on February 20, 2026. ECF No. 37. The Motion is now fully briefed.

**STANDARD OF REVIEW**

A case is properly dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) "when the district court lacks the statutory or constitutional authority to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). A court must accept as true all material factual allegations in the complaint and will draw inferences favorable to the party asserting jurisdiction. *Sharkey v. Quarantillo*, 541 F.3d 75, 83 (2d Cir. 2008) (citing *Merritt v. Shuttle, Inc.,* 245 F.3d 182, 186 (2d Cir. 2001) and *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 561 (1992)). However, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain,* 478 U.S. 265, 286 (1986). Once challenged, the party asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists. *See Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005).

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully," and accordingly, where the plaintiff alleges facts that are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In considering a motion to dismiss pursuant to Rule 12(b)(6), courts accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008). However, the court need not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007)). Instead, the complaint must provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 121 (2d Cir. 2007) (citing *Twombly*, 550 U.S. at 555). In addition to the factual allegations in the complaint, the court may consider "the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) (citation and internal quotation marks omitted).

**DISCUSSION**

## I. Plaintiff's Claims are Ripe

"The ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003). Defendants' Motion raises both prudential concerns (as to the contract-based claims) and jurisdictional concerns (as to the Declaratory Judgment claim).

Defendants argue that Plaintiff's contract claims are not prudentially ripe, and therefore, presumably, ask the Court to abstain from exercising jurisdiction in this case. *Compare* Mot. at 9 ("To determine if a controversy is ripe, courts "'look, first, to whether the issue is fit for review and, second, to the hardship to the parties of withholding review.'") *with Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 691 (2d Cir. 2013) ("To determine whether to abstain from a case on prudential ripeness grounds, 'we proceed with a two-step inquiry, requiring us to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" (citation omitted)).[1] The central question when addressing prudential ripeness is whether it "would *better* be heard now or at some point in the future." *Simmonds v. I.N.S.*, 326 F.3d 351, 359 (2d Cir. 2003) (emphasis in original). The Court must evaluate "(1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." *Sharkey v. Quarantillo*, 541 F.3d 75, 89 (2d Cir. 2008).

The ripeness of a declaratory judgment claim is tied more closely to whether there is a "justiciable," rather than "abstract," controversy. *See Certain Underwriters at Lloyd's, London v.*

---

[1] Because the Court understands the substance of Defendants arguments to raise a question of prudential ripeness with respect to the contract claims, it will only speak briefly on constitutional ripeness, which is a "constitutional prerequisite to exercise jurisdiction by the federal courts." *See Nutritional Health Alliance v. Shalala*, 144 F.3d 220, 225 (2d Cir. 1998); *see also Walsh*, 714 F.3d at 687 (the Court has "an independent duty to consider other aspects of subject-matter jurisdiction" such as ripeness). Constitutional ripeness is best thought of as "a specific application of the actual injury aspect of Article III standing." *Id.* at 688. The Court is satisfied that both standing and constitutional ripeness are satisfied here. *See SM Kids, LLC v. Google LLC*, 963 F.3d 206, 212 (2d Cir. 2020) ("a party that alleges harm due to another's breach of a contract has a justiciable controversy with the other party and…the courts have jurisdiction to resolve the controversy").

*St. Joe Minerals*, 90 F.3d 671, 675 (2d Cir. 1996). "The standard for ripeness in a declaratory judgment action is that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *In re IBM Arbitration Agreement Litig.*, 79 F.4th 74, 86 (2d Cir. 2023) (quoting *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 388 (2d Cir. 2005)).

The Court finds that Plaintiff's contract-based claims are ripe but finds that Plaintiff's request for declaratory relief is not ripe and should be dismissed.

**a. Contract and Covenant of Good Faith claims are ripe**

Prudential ripeness concerns arise primarily where there are "claim[s] of future injury." *See Simmonds*, 326 F.3d at 359. The Second Circuit has found a case to be fit for review where it presents a past or present injury. *See In re Methyl Tertiary Butyl Ether Prod. Liability Litig.*, 725 F.3d 65, 110 (2d Cir. 2013) (finding that Plaintiff's "claims are prudentially ripe" where the Complaint "alleged a *present* injury" (emphasis in original)).

Defendants argue that Plaintiff's claims for breach of contract and the implied covenant of good faith and fair dealing are not ripe for review. The Court disagrees. This case is fit for judicial decision because it presents "legal questions and there is a concrete dispute between the parties." *Sharkey*, 541 F.3d at 89. New York state courts and courts in this Circuit applying New York law have virtually unanimously found breach of contract cases to be fit for judicial decision once the breach has occurred. "A breach of contract claim becomes [constitutionally] ripe under New York law 'immediately upon the breach.'" *Goldberg v. Pace Univ.*, 88 F.4th 204, 213 (2d Cir. 2023); *see also Greenlight Reinsurance, Ltd. v. Appalachian Underwriters, Inc.*, 958 F.Supp.2d 507, 518 (S.D.N.Y. 2013) ("[a] breach of contract case ... is ripe immediately upon the [alleged] breach, even where damages remain uncertain"). This reasoning applies to as well to

claims for breaches of an implied duty of good faith, which is “merely a breach of the underlying contract.” *See Harris v. Provident Life and Acc. Ins. Co.*, 310 F.3d 73, 80 (2d Cir. 2002); *see also Wu v. JP Morgan Chase Bank, N.A.*, *3 (breach of “the implied covenant can operate…as a freestanding basis for breach of contract”).

Defendants further argue that “whether a breach has occurred is not knowable until *after* Defendants have been held liable” in the Canadian Litigation. Mot. at 17 (emphasis in original). This is not so. The central issues in adjudicating the breach of contract claim relate to Defendants’ obligations to notify Plaintiff of events for which they seek indemnification. *See* Compl. at 14-15. Answering that question in this case is dependent on incidents that have already occurred, among them when Defendants provided notice of the events for which Defendants have already requested indemnification. While “the factual record is not yet fully developed” as to whether the breach will result in any actual indemnification, the question of breach itself is “a live case which is ‘fit for judicial decision.’” *Walsh*, 714 F.3d at 692 (quoting *Sharkey*, 541 F.3d at 89).

The Plaintiff would suffer hardship if a judicial decision is withheld. Plaintiff has alleged an injury for which it is entitled to a remedy. Plaintiff is not required to forego its requested remedy simply because the damages to which it may be entitled may change. *See Greenlight Reinsurance, Ltd.*, 958 F.Supp.2d at 518 (“[a] breach of contract case ... is ripe immediately upon the [alleged] breach, even where damages remain uncertain”); *see also AB Oil Servs., Ltd. v. TCE Ins. Servs., Inc.*, 188 A.D.3d 624, 628 (2d Dep’t 2020) (finding a breach of contract claim to not be premature even where Plaintiff might only recover nominal damages).

Claims I and II are therefore ripe for adjudication.

**b. Plaintiff’s Declaratory Judgment claim is not ripe**

The Court must "distinguish between the duty to defend and the duty to indemnify in determining whether each issue posed in a declaratory-judgment action is ripe for adjudication." *Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 93 (2d Cir. 2023). For a claim seeking declaratory judgment with respect to a duty to indemnify, "the court must find a practical likelihood that the third party will *prevail* in such litigation." *Id.* (emphasis in original). In a claim for duty to defend, "the district court must find a practical likelihood that a third party will *commence* litigation against the insured." *Id.*

While there is "no *per se* rule, however, that all declaratory judgment actions brought to establish a duty to indemnify are premature during the pendency of an underlying action," *see Atl. Cas. Ins. Co. v. Value Waterproofing, Inc.*, 918 F. Supp. 2d 243, 261 (S.D.N.Y.), *aff'd sub nom. Atl. Cas. Ins. Co. v. Greenwich Ins. Co.*, 548 F. App'x 716 (2d Cir. 2013), the Court finds this matter to be premature. Plaintiff's Third Cause of Action requests declaratory judgment "establishing that… Rio Tinto has no obligation to indemnify Howmet in the Halton Hadley Lawsuit." Compl. at 18. Whether Plaintiff is required to indemnify Defendants depends on whether Plaintiff was actually prejudiced by the alleged breach. Such prejudice relies on the outcome of the Canadian Litigation, and the Complaint contains no allegations regarding the "practical likelihood that the third party will prevail" in the litigation. *See Admiral Ins. Co.*, 57 F.4th at 93.

In its Opposition, Plaintiff cites to cases focused on the duty to defend. *See* Opp. at 11 ("With respect to the duty to defend, the district court must find a practical likelihood that a third party will commence litigation against the insured." (citing to *Admiral Ins.*, 57 F.4th at 93)). In some cases, a determination that a party "has no duty to indemnify…arises from the same determinations that conclude it has no duty to defend." *See Atl. Cas. Ins.*, 918 F.Supp.2d at 262.

In such cases, it may be appropriate to reach the question of a duty to indemnify at the same time that the Court makes a determination on the duty to defend. *See id*. That does not appear to be appropriate here for two reasons. First, New York treats the "duty to defend [as] broader than [the] duty to indemnify," *Automobile Ins. Co. of Hartford v. Cook*, 7 N.Y.3d 131, 137 (N.Y. 2006). The Court thus finds no reason to depart from the general rule that declaratory judgment would not be ripe absent a finding that there is a practical likelihood that the third party would prevail in the Canadian Litigation. Second, the Complaint does not raise a duty to defend, nor has Plaintiff alleged that the questions underlying the two duties are closely related in this case. Even if a duty to defend claim were ripe, the adjudication of such a claim would not automatically entitle Plaintiff to consideration of the indemnification claim at the same time.

Count III is therefore dismissed without prejudice.

## II. Plaintiff's Claim for Breach of Contract

Defendants seek to dismiss Count I for multiple reasons. Defendants argue that Plaintiff's claim is time barred inasmuch as it relies on the 2004 lease between Defendants and Hadley. Defendants are correct and Plaintiff may not rely on the lease to support their breach of contract claims.

Defendants' remaining arguments fail. Defendants' arguments are not supported by unambiguous language in the Blade Agreement and must be rejected. Defendants make additional arguments that Plaintiff may not rely on the mitigation provision to make out a claim for breach of contract and that increased counsel fees are not a proper damages theory. These arguments are similarly unpersuasive. Accordingly, Plaintiff's claim for breach of contract is dismissed to the extent it relies on the 2004 lease between Howmet and Hadley. Defendants' Motion is denied with respect to its other arguments.

**a. Plaintiff's Claim for Breach of Contract Based on Failure to Notify Rio Tinto of 2004 Lease Is Not Timely**

Defendants argue that Plaintiff may not base its breach of contract claim on the lease that Defendants signed with Hadley in 2004 because the statute of limitations has expired on any breach that may have occurred in 2004. Defendants are correct. The New York statute of limitations for breach of contract is six years from breach, not from any discovery. *See QK Healthcare, Inc. v. InSource, Inc.*, 108 A.D.3d 56, 65 (2d Dep't 2013) (citing CPLR 213[1]) ("The general rule applicable to actions to recover damages for breach of contract is that a six-year statute of limitations begins to run when a contract is breached or when one party fails to perform a contractual obligation."). Plaintiff's claim is barred unless the doctrine of equitable estoppel applies, as Plaintiff argues.

Equitable estoppel "refers to a court's power to bar the application of the statute of limitations due to representations or conduct by a party which induces the opposing party to postpone bringing suit on a known cause of action." *Abercrombie v. Andrew Coll.,* 438 F.Supp.2d 243, 265 (S.D.N.Y. 2006). Under New York law, the doctrine should be "invoked sparingly and only under exceptional circumstances." *Id*. Equitable estoppel requires "affirmative steps" by the defendant "to prevent plaintiff from bringing a claim" within statute of limitations period. *Roeder v. J.P. Morgan Chase & Co*., 523 F.Supp.3d 601, 616 (S.D.N.Y. 2021) (citing *Zumpano v. Quinn*, 6 N.Y.3d 666, 674 (2006)).

Plaintiff claims that the "affirmative conduct" was Defendants' failure to notify Plaintiff of the 2004 lease and agreement that required Plaintiff to indemnify Hadley. Opp. at 22 ("Howmet never notified Rio of this lease and agreement" though the Blade Agreement "required Howmet to do so"). Such a failure to notify is not "affirmative conduct," nor is it alleged to be "specifically directed at preventing the plaintiff from bring suit." *Twersky v.*

*Yeshiva*, 993 F.Supp.2d 429, 442 (S.D.N.Y. 2014). Plaintiff merely alleges "failure to disclose the basis for potential claims," and as such, the "extraordinary remedy" of equitable estoppel is not appropriate. *See id.*

At this stage, dismissal is appropriate although there may be "a question of fact about the applicability of equitable tolling." Opp. at 22. Plaintiff may raise equitable estoppel after discovery. *Cf. Citibank, N.A. v. Friedman*, 747 F.Supp.3d 427, 437 (E.D.N.Y. 2024) ("should discovery reveal additional support for equitable tolling, Plaintiff is free to re-raise these issues after the close of discovery"); *see also TIG Ins. Co. v. Newmont Min. Corp.*, 413 F.Supp.2d 273, 286 (S.D.N.Y. 2005) (equitably estopping a statute of limitations claim where discovery revealed affirmative misrepresentations made by Defendants in its reports to Plaintiff).

**b. Defendants' Interpretation of the Notice Provision Fails**

Defendants argue that, based on the Complaint's allegations, Defendants complied with the Blade Agreement. Section 9.03(d) (the "Notice Provision") provides, in part:

> [Howmet] agrees to give [Rio Tinto] written notice of any claim, assertion, event or proceeding by or in respect of a third party as to which it may request indemnification hereunder or as to which the Sellers' Threshold Amount may be applied as soon as is practicable and in any event within 30 days of the time that the Purchaser learns of such claim, assertion, event or proceeding, provided, however, that the failure to so notify . . . shall not affect rights to indemnification hereunder except to the extent that the Sellers…are actually prejudiced by such failure.

Section 9.04 incorporates this same Notice Provision for indemnification claims related to Pre-Closing Environment Matters. *See* Blade Agreement, § 9.04. Defendants argue that the only "claim, assertion, event, or proceeding" at issue is the Canadian Litigation. *See* Mot. at 12. Defendants' argument cannot support dismissal.

When interpreting a contract at the motion to dismiss stage, the "initial inquiry is whether the contractual language, without reference to sources outside the text of the

contract, is ambiguous." *JN Contemporary Art LLC v. Phillips Auctioneers LLC*, 507 F.Supp.3d 490, 499 (quoting *In re MPM Silicones*, 874 F.3d 787, 795 (2d Cir. 2017)). "No ambiguity exists where the contract language has 'a definite and precise meaning, unattended by danger of misconception in the purport of the contract itself, and concerning which there is no reasonable basis for a difference of opinion.'" *Law Debenture Trust Co. of New York v. Maverick Tube Corp.*, 595 F.3d 458, 467 (2d Cir. 2010) (quoting *Hunt Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1288 (2d Cir. 1989)) (cleaned up).

"For a defendant to prevail on a motion to dismiss for breach of contract, the contract must unambiguously support the defendant's position." *Pro. Fighters League, LLC v. Takeover Indus., Inc.*, 770 F.Supp.3d 718, 724 (S.D.N.Y. 2025) (quoting *Trireme Energy Dev., LLC v. RWE Renewables Ams., LLC*, No. 22 Civ. 7439 (JLR), 2023 WL 5469662, at *12 (S.D.N.Y. Aug. 24, 2023)). Defendants must therefore show that contract unambiguously takes "claim, assertion, event, or proceeding" to refer exclusively to litigation—or at least to exclude the environmental site assessments and Litigation Tolling Agreement. The text of the contract does not support such a reading.

The Court begins, as it must, with the language itself. It is true that the contract treats "claim" and "proceeding" as potentially related to litigation, or at least involvement with Courts. For example, Section 9.03(d) refers to "defense" of "any such claim or proceeding." (The provision also refers to "settlement" of the claims or proceedings, which does not require litigation to have actually occurred, or even to necessarily to be contemplated.) The Agreement, however, does not appear to treat "event" and "assertion" as interchangeable with "claim" and "proceeding." This conclusion is supported by the Definitions provided by the contract. *See Law*

*Debenture Trust Co. of New York v. Maverick Tube Corp.*, 595 F.3d 458, 467 (2d Cir. 2010) ("Where the parties dispute the meaning of particular contract clauses, the task of the court 'is to determine whether such clauses are ambiguous when read in the context of the entire agreement'" (quoting *Sayers v. Rochester Telephone Corp. Supplemental Management Pension Plan,* 7 F.3d 1091, 1095 (2d Cir.1993))). The contract defines "action" to include claims and proceedings but does not refer to "events" or "assertions." *See* Blade Agreement, § 1.01. The Defendants do not provide any text from the remaining parts of the contract that would support the argument that event or assertion is necessarily tied to litigation or court proceedings.

For event to be interchangeable with claim could also disrupt the contract by distorting other provisions. For example, the contract requires Howmet to "mitigate their Losses…after becoming aware of any event" that might "give rise to any Losses." *See, e.g.,* Blade Agreement, § 9.03(h). Losses are defined to include "claims" incurred by Howmet. *See* Blade Agreement, § 1.01. The more natural reading of this provision uses "event," to refer to an occurrence that is not related to litigation; that it contains a requirement to mitigate losses once Howmet becomes aware of any occurrence at all that would give rise to litigation (or claims, liabilities, damages, etc.). Howmet's reading (using "event" to be exclusively related to litigation) creates an almost circular meaning to this provision, i.e., as a requirement to mitigate losses after becoming aware of litigation that would give rise to further litigation. *See Kephart v. Certain Underwriters at Lloyd's of London*, 427 F.Supp.3d 508, 515 (S.D.N.Y. 2019) ("In interpreting contracts, 'words should be given the meanings ordinarily ascribed to them and absurd results should be avoided.'" (quoting *Mastrovincenzo v. City of New York*, 435 F.3d 78, 104 (2d Cir. 2006)).

Accordingly, the Agreement cannot be said to "unambiguously" support Defendants' reading. Plaintiff plausibly and reasonably alleges that the provision requiring notice of any

"claim, assertion, event, or proceeding" is not triggered only when litigation commences. Plaintiff therefore plausibly states a claim for breach of the Notice Provision because its proposed meaning of the provision is reasonable. Plaintiff alleges that the litigation tolling agreement shows the possibility of Loss for which Defendants would seek indemnification. At least at the point that the tolling agreement was signed, the Notice Provision was triggered, and Plaintiff should have been notified "as soon as practicable."[2] The environmental site assessments are also plausibly alleged to be triggering events under the same reasoning.

**c. Defendants provide no basis to find that increased attorneys' fees are not a proper damages theory**

Defendants argue that Plaintiff has not pleaded "its unambiguous right to recover its fees under the Agreement." Mot. at 16. This argument similarly does not lead to dismissal.

As noted above, the ability of Plaintiff to *actually* recover the extent of its claimed damages has no bearing on dismissal because a Plaintiff can recover nominal damages for breach of contract. *See AB Oil Servs., Ltd.*, 188 A.D.3d at 628 ("actual damages are not an essential element of a breach of contract cause of action" because "nominal damages are always available in breach of contract" (citing *Kronos, Inc. v. AVX Corp.*, 81 N.Y.2d 90, 95 (1993) (alterations omitted))).

**d. Violation of provision requiring Defendants to mitigate damages is a cognizable breach of contract theory**

Defendants' final argument is that "failure to mitigate" losses is not a viable theory for breach of contract. The Court disagrees. The contract can reasonably be read to create an obligation for Defendants to mitigate its Losses, presumably referring to, *inter alia*, liabilities for

[2] The Court does not express a view as to whether the Notice Provision (specifically as to the limitation of "may seek indemnification") was actually triggered. The factual record is not developed as to this point. Based on the facts alleged, and the reasonable interpretation proposed by the Plaintiff, the Court finds only that the Complaint is sufficiently plead to survive dismissal.

which Plaintiff would be required to indemnify Defendants. *See, e.g.,* Blade Agreement, § 9.03(h). Under this reading, the Contract would not be speaking to Defendants' obligation to mitigate damages incurred from someone else's breach of contract. *See APL Co. PTE Ltd. v. Blue Water Shipping U.S. Inc.*, 592 F.3d 108, 111 (2d Cir. 2010) ("The injured party, however, bears an obligation to make reasonable efforts to mitigate its damages and failure to do so may cause a court to lessen the recovery."). It is instead referring to Defendants' obligations as the injuring party.

Defendants rely on a case stating that "failure to mitigate damages" is not an independent cause of action. *See Adon Constr., Inc. v. Renesola Am. Inc.*, 2017 WL 879279, at *6 (D. Haw. 2017). That may well be true. But this argument has little force where, as here, the Plaintiff's claim is for enforcement of a contractual provision.

The complaint alleges that Defendants breached the mitigation provision. Whether Plaintiff may recover for any actual excess liability (as opposed to nominal damages) is not a question currently before the Court.

Accordingly, while Defendants are correct that Plaintiff may not recover for any breach stemming from the 2004 Hadley Lease, the remaining arguments raised by Defendants fail.

## III. Plaintiff's Claim for Breach of Breach of Implied Covenant of Good Faith and Fair Dealing Must Be Dismissed

Under New York law, claims are duplicative when both "arise from the same facts and seek the identical damages for each alleged breach." *Deutsche Bank National Trust Company v. Quicken Loans, Inc.*, 810 F.3d 861, 869 (2d Cir. 2015) (citing *Amcan Holdings, Inc. v. Canadian Imperial Bank of Commerce*, 894 N.Y.S.2d 47 (N.Y. App. Div. 2010)). By contrast, "a claim for breach of the implied covenant of good faith and fair dealing is not duplicative when the claim

'depends on facts in addition to those that might support a breach of contract claim.'" *Emigrant Bank v. SunTrust Bank*, 2023 WL 2647648, at *18 (S.D.N.Y. 2023) (internal citations omitted).

"[A]n implied covenant of good faith and fair dealing claim can be maintained along with a breach of contract claim 'only if the damages sought by the plaintiff for breach of the implied covenant are not intrinsically tied to the damages allegedly resulting from breach of contract.'" *Freepoint Commodities LLC v. Ridgebury Kilo LLC*, 632 F.Supp.3d 549, 560 (S.D.N.Y. 2022). Here, the alleged damages are so closely related and "intrinsically tied" to the breach of contract claims as to render Claim II duplicative. *Compare* Compl. ¶ 78 *with* ¶ 83.

Even if the damages were not identical, the allegations underlying both claims are the same. Plaintiff protests that it was deprived the benefit of its bargain because of Defendants' "actions in inviting the Canadian Litigation." Opp. at 22. Count I of the Complaint alleges that the Defendants invited the Halton Hadley lawsuit, thereby breaching the Mitigation Provision, by "revoking or allowing to lapse the litigation tolling agreement with Hadley." *See* Compl. ¶¶ 77(d)(1)(i). Count II similarly alleges that the Defendants "acted in bad faith" by "inviting…the Halton Hadley Litigation." *Id*. at ¶ 82(a). These do not demonstrate allegations which are "distinct" from each other. *See* Opp. at 23.

**CONCLUSION**

Because the Court will dismiss the Breach of Implied Covenant claim (Count II) and the Declaratory Judgment claim (Count III), it need not consider the remaining arguments for dismissal. Any other arguments Defendants raises are without merit.

The Court now considers whether to grant Plaintiff leave to amend the Complaint. Federal Rule of Civil Procedure 15(a)(2) requires courts provide leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2); *see also McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184,

200 (2d Cir. 2007). That said, it remains "within the sound discretion of the district court to grant or deny leave to amend." *Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 447 (2d Cir. 2019) (citation and internal quotation marks omitted). Leave may be denied where a plaintiff does not request to amend its pleading. *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (observing that "no court can be said to have erred in failing to grant a request that was not made"); *see also Morey v. Windsong Radiology Grp*., P.C., 794 F.App'x 30, 34 (2d Cir. 2019) (summary order) (holding that "the district court did not abuse its discretion in declining to *sua sponte* allow [plaintiff] leave to file an amended complaint").

Plaintiff has not requested leave to amend. However, it is possible that through additions to the Complaint, Plaintiff could sufficiently plead their dismissed claims. *Bellocchio v. Garland*, 614 F.Supp.3d 11, 20 (S.D.N.Y. 2022); *see also Glob. Tech Indus. Grp. Inc. v. Wells*, No. 21 CIV. 06891 (ER), 2022 WL 2872298, at *6 (S.D.N.Y. July 21, 2022). Accordingly, the Court grants Plaintiff 30 days to amend the Complaint.

Defendants' Motion is **GRANTED** in part and **DENIED** in part. Count II is **DISMISSED** without prejudice. Count III is **DISMISSED** without prejudice to replead if the claim becomes ripe. Plaintiff is **GRANTED** leave to amend the Complaint with 30 days of the date of this Order. The Clerk of Court is respectfully directed to terminate ECF No. 32.

**SO ORDERED.**

**Dated:** September 29, 2026
**New York, New York**

**ANDREW L. CARTER, JR.**
**United States District Judge**